UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Steak N Shake Enterprises, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:09-cv-00404-SEB-TAB |
| vs. ) | |
| ) | |
| The Varnson Group, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| ) | |
| The Varnson Group, LLC, ) | |
| ) | |
| Counterclaim Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Steak N Shake Enterprises, Inc., ) | |
| ) | |
| Counterclaim Defendant. ) | |
| _____) | |
| ) | |
| The Varnson Group, LLC, ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Sardar Biglari, individually, ) | |
| ) | |
| Third Party Defendant. ) | |

**ORDER**

Plaintiff and Counterclaim Defendant Steak n Shake Enterprises, Inc. ("Steak n Shake") have moved for offensive summary judgment with respect to its breach of

contract and conversion claims (Counts I and II) against Defendant and Counterclaim Plaintiff The Varnson Group, LLC ("Varnson").  Steak n Shake also requests that the Court grant it summary judgment with regard to Varnson's conversion, unjust enrichment, and part of its breach of contract counterclaims.[1]  Varnson concedes that Steak n Shake is entitled to summary judgment with regard to its unjust enrichment claim.  Varnson opposes Steak n Shake's motion, however, with regard to Steak n Shake's breach of contract and conversion claims.  Additionally, Varnson requests offensive summary judgment on the issue of liability only with regard to its counterclaim against Steak n Shake for breach of contract.  For the reasons detailed herein, Steak n Shake's motion is <u>GRANTED IN PART AND DENIED IN PART</u> and Varnson's motion is <u>GRANTED</u>.

## Factual Background

Steak n Shake is an Indiana corporation that operates 400 "company units" in 16 states. Varnson is a sole proprietorship owned and operated by Alan Varnson that provides marketing services.

On November 18, 2008, Varnson and Steak n Shake entered into an agreement effective November 1, 2008 ("the Agreement").[2]  The Agreement specified that it was

---

[1] Steak n Shake takes the position that a genuine issue of material fact exists with regard to part of Varnson's breach of contract claim against it related to two invoices amounting to $4,197.30.

[2] The parties had previously entered into an agreement for a ninety day "test program" according to which Varnson was to provide certain services related to Steak n Shake's

(continued...)

governed by Indiana law. The Agreement covered two types of services provided by Varnson, "Scope of Work Services" and "Authorized Work Services." The Scope of Work Services were described in Exhibit A to the Agreement. For the performance of these services, Varnson was to be compensated $178,333 per month (the "Scope of Work Services Fee").[3] If Steak n Shake required services in addition to those described in Exhibit A, these could be negotiated separately and were considered Authorized Work Services.

Section VIII of the Agreement, entitled "Termination of the Agreement," provides that the contract could be terminated "with or without cause, for any reason or for no reason, by either party with ninety (90) days' written notice to the other party." This Section also lays out the procedural steps by which such termination would occur. First, along with the notice of termination, the terminating party was required to include a list of all services believed to be outstanding along with a description of that party's proposal for the manner in which those services should be handled thereafter. The non-terminating party was to respond with a corresponding list of outstanding services and provide any comments or objections to the terminating party's list. The Agreement explains that

---

[2](...continued)
"Endorsement Radio program." By its terms, the November Agreement superceded the parties' prior agreement. We note the existence of this prior agreement, however, because it is the basis for Steak n Shake's motion for summary judgment with regard to Varnson's unjust enrichment claim, which Varnson accedes to.

[3]The Agreement stated that Varnson would be compensated only $55,000 per month in November and December of 2008 but this lesser fee amount is not important to this case.

services already in progress could, at Steak n Shake's discretion, be completed by Varnson, but Varnson was not to begin any additional services after receipt of the notice of termination.  Within thirty days of receiving the notice of termination, Varnson was to prepare a list of any and all items for which it believed it was owed compensation.  The Agreement also provides: "In the event of termination hereunder [Steak n Shake] shall pay only for fees incurred on a *pro rata* basis through the day of the month in which termination is effective."  Finally, Section VIII of the Agreement states:

> Upon termination of this Agreement, at no additional cost to [Steak n Shake], [Varnson] shall transfer, assign and make available to Client all property and materials (including incomplete approved work) in Agency's possession or control belonging to Client, and all information regarding Client's advertising. Upon termination, unused advertising plans, ideas and materials prepared by [Varnson] for [Steak n Shake], if accepted or paid for by [Steak n Shake] prior to the date of termination, shall be and remain [Steak n Shake's] property.

Section IX of the Agreement, entitled "Changes, Termination, or Suspension of Work," provides as follows:

> [Steak n Shake] may, by written order to [Varnson] in the form required for Authorized Work set forth in Section I, require additions, modifications, suspension or termination of one or more Services, provided, however, if because of time constraints, a written authorization cannot be obtained, a verbal authorization is acceptable provided that such verbal authorization is confirmed in writing by [Steak n Shake] to [Varnson] within two (2) days thereafter.  In the event of [Steak n Shake's] termination of any work or service contained within the Scope of Work (as opposed to work or services undertaken as Authorized Work), then in such event [Varson] and [Steak n Shake] will negotiate a corresponding reduction in the compensation for Scope of Work as set forth in Exhibit B, Section A ("Compensation for Strategic Marketing, Account Services, Creative Services, Corporate Media Planning and Buying").

4

Agreement, Section IX.

Section XVII of the Agreement covers "Safeguarding Proprietary and Confidential Information." Pursuant to that Section, Varnson was to return all of Steak n Shake's proprietary information "upon request."

On February 3, 2009, Jim Flaniken, Steak n Shake's Vice President of Marketing, issued a Notice of Termination Letter to Varnson along with a list of services Steak n Shake believed to be outstanding. The letter acknowledged the ninety-day notice requirement pursuant to Section VIII of the Agreement and stated that termination would be effective May 5, 2009. As the Agreement instructed, Varnson responded to the Notice of Termination on February 9, 2009 and included a list of the services it believed were outstanding.

On February 16, 2009, Flaniken sent another letter to Varnson informing it that the company was invoking its right pursuant to Section IX of the Agreement to cease all services being provided by Varnson. The letter continued:

> Pursuant to Section IX [of the Agreement], the parties are required to, "negotiate a corresponding reduction in the compensation for Scope of Work." In light of the fact that Varnson will perform no further services for [Steak n Shake], [Steak n Shake] should not be obligated to provide any further compensation under the Agreement.

The parties agree that Varnson performed no further services for Steak n Shake after February 16, 2009.

Steak n Shake sent additional correspondence to Varnson on February 20th and 23rd, 2009 reiterating that Varnson was to perform no further work for Steak n Shake and

demanding the return of certain assets in Varnson's possession that belonged to Steak n Shake.[4] Steak n Shake also explained that it intended to compensate Varnson on a pro rata basis for services until February 17, 2009 but would not compensate Varnson through May 5, 2009, the date that termination was to become effective pursuant to the Agreement and the notice of termination letter.

According to Flaniken, Varnson informed Steak n Shake in early March 2009 that it would not return Steak n Shake's assets until Steak n Shake paid the balance on a list of invoices, only six of which currently remain unpaid. Steak n Shake concedes that there is a factual dispute over the reasonableness of two of these invoices and, thus, does not request summary judgment with respect to them. The other four invoices, however, relate to the Scope of Work Services Fee that Varnson claims it is owed for the remainder of February, the full months of March and April, and the beginning of May, 2009. Despite Varnson's initial refusal to return the assets and although the invoices were never paid, the parties agree that Varnson returned Steak n Shake's assets on April 1, 2009. However, Steak n Shake claims that it incurred labor costs to restore the materials that it would not have incurred if Varnson had returned the assets when they were requested.

Before the return of the assets, Steak n Shake filed this complaint for immediate declaratory relief in the Marion Superior Court. The case was removed to this court in

---

[4]These assets were apparently contained on a hard drive and included TV spot reels, film, domain names, advertising libraries in digital form, and historical data relating to past media buys.

April 2009 at which time Varnson filed its counterclaim and third party complaint against Sardar Biglari, Chief Executive Officer of Steak n Shake, for breach of contract, fraudulent inducement, civil conversion, unjust enrichment and violations of the Indiana and Federal Securities Act.  The parties have stipulated to dismissal of Varnson's securities counterclaims and we previously granted judgment on the pleadings in favor of Steak n Shake with regard to Varnson's fraudulent inducement claim and the vast majority of its unjust enrichment claim.  As noted above, Varnson has abandoned the remainder of its unjust enrichment claim meaning that only its breach of contract and conversion claims are currently pending.  Steak n Shake filed its amended complaint against Varnson in May 2009 asserting claims for conversion and breach of contract based on Varnson's initial refusal to return Steak n Shake's assets.

## Legal Analysis

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255.  However, neither the "mere

existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enters., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element

"necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

Courts often confront cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief.  "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard."  Kohl v. Ass'n. of Trial Lawyers of Am., 183 F.R.D. 475 (D.Md.1998).  Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## Discussion

### I.  Varnson's Claims for Conversion and Breach of Contract Relating to Payment After February 17, 2009

Varnson alleges that Steak n Shake breached the Agreement by failing to remit the Scope of Services fee ($178,333 per month) due it through May 5, 2009.  Varnson's position is that the Agreement provides for a ninety day notice period before the effective date of termination of the Agreement became and, thus, Steak n Shake breached the Agreement when it refused to pay Varnson the Scope of Services fee after February 17, 2009.  Steak n Shake contends that Varnson's breach of contract claim fails because the Agreement clearly states that Varnson is only entitled to the Scope of Services fee if the

Scope of Work Services are actually performed.  Because Varnson performed no such services after Flaniken's February 16th letter, Steak n Shake maintains that it is not liable to pay Varnson through May 5th.

Varnson rejoins with the following arguments in defense of its claim: (1) Steak n Shake's failure to pay Varnson from February 16th through May 5th is a breach of contract because Section IX does not allow Steak n Shake to bypass Section VIII's termination provision requiring a ninety-day notice period; (2) Even if Section IX of the Agreement could be used to reduce the services Varnson was to provide through the termination period, Steak n Shake failed to "negotiate" a corresponding reduction in compensation as Section IX also requires; (3) Even if Section IX of the Agreement could be used to reduce the services Varnson was to provide through the termination period, Steak n Shake failed to issue the written order to Varnson in the form required by Section I of the Agreement. We agree with Varnson in each of these respects.

Steak n Shake's abrupt announcement of its decision to suspend Varnson's compensation for the remainder of the ninety-day termination period constituted a breach of the Agreement.  The unambiguous meaning of Section VIII is to provide some protection to Varnson in the event that Steak n Shake decided to terminate the Agreement, given that Steak n Shake was entitled to do so for any reason whatsoever. That protection was, of course, the ninety-day period during which the previously agreed upon compensation, the Scope of Services fee, would continue to flow to Varnson while the services wound down in the manner prescribed in the Agreement.  We find entirely

unconvincing Steak n Shake's attempt to argue that Varnson earned only that portion of the monthly Scope of Services fee that corresponded with the services performed during that particular month.  Steak n Shake's interpretation – that Section IX allows it to unilaterally reduce both the services rendered by Varnson and its attendant compensation to zero only a few days into the ninety day period – would render the ninety-day notice provision meaningless.  We find no support for such an interpretation under Indiana law.  See Robinson v. Century Personnel, Inc., 678 N.E.2d 1268, 1270 (Ind. Ct. App. 1997)("The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless.").  Read as a whole, it is clear that Sections VIII and XI were intended to address completely different situations – the former being the termination of the Agreement and the latter being a scaling back of those services that the parties agreed Varnson would perform in return for its Scope of Services fee.  Flaniken's February 3rd letter invoked Steak n Shake's right pursuant to Section VIII to terminate entire the Agreement and, in turn, Varnson's right to ninety-days of notice before its compensation ceased.

   In addition, even if Steak n Shake's interpretation of the Agreement were reasonable, Steak n Shake engaged in no "negotiation" as Section IX requires nor did it provide Varnson with the written authorization required to terminate Varnson's services. Instead, Flaniken's February 16th and 20th letters precipitously announced to Varnson that the agency would be compensated only on a pro rata basis for services performed through February 17, 2009, not through May 5, 2009, the date upon which the termination was

11

effective and the date until which the Agreement provides that Varnson is to be compensated.

We find no genuine issue of material fact with regard to Steak n Shake's breach of the Agreement that would foreclose summary judgment in favor of Varnson. Varnson's request for summary judgment with regard to the issue of liability only on its breach of contract counterclaim is GRANTED. Correspondingly, Steak n Shake's motion for summary judgment on Varnson's breach of contract counterclaim is DENIED.[5]

## II.   Steak n Shake's Claims for Conversion and Breach of Contract Relating to the Return of Assets

Under Indiana law, a plaintiff may bring a claim for civil conversion under the state's criminal conversion statute, which provides: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion ...". IP of a W. 86th St. 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC, 686 F.3d 361 (7th Cir. Ind. 2012) (citing Ind. Code § 35-43-4-3(a)). Steak n Shake maintains that once it requested the return of its assets, Varnson's continued possession of those assets until April 1, 2009 was knowingly unauthorized. In support, Steak n Shake points to the provision in Section XVII, which directs that Varnson must return Steak n Shake's proprietary information "upon request." Steak n

---

[5]Steak n Shake also sought summary judgment with respect to Varnson's counterclaim for conversion. Steak n Shake argued that Varnson's claim fails because Varnson has failed to identify any Varnson property that was allegedly converted and in any event there was never any unqualified demand for the return of such property. Varnson has interposed no opposition to this request in either its initial opposition to Steak n Shake's motion or the final brief it filed with this Court. See Docket Nos. 77, 83. Thus, Steak n Shake's motion is GRANTED in this regard.

Shake maintains that it is entitled to treble damages in the amount of $7,750.28, plus attorneys' fees, as a result of Varnson's conduct.  Steak n Shake claims that these actions also constitute a breach of contract on the part of Varnson.

Varnson's position is that Section VIII covers the return of assets such as those at issue and indicates that those assets must be returned only "[u]pon termination of this Agreement," which termination was effective on May 5, 2009, over a month after the parties have stipulated that Varnson returned Steak n Shake's assets.

We agree with Steak n Shake that, pursuant to Section XVII, Varnson was required to return Steak n Shake's assets as soon as it made that request of Varnson. Section VII also obligates Varnson to return Steak n Shake's assets upon the termination of the Agreement; however, Section XVII specifically applies where, as here, a request was made for the return of assets prior to the termination of the Agreement.  That said, we also agree with Varnson that a question of fact remains with regard to whether Varnson complied with its obligation to return the assets upon request.  Where, as here, "the parties to an agreement do not fix a concrete time for performance, the law implies a reasonable time."  Harrison v. Thomas, 761 N.E.2d 816, 819 (Ind. 2002).  Whether Varnson's April 1, 2009 return of Steak n Shake's assets was reasonable is a question of fact depending on "the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract."  See id. Thus, Steak n Shake's motion for partial summary judgment is DENIED with regard to their claims against Varnson for breach of contract and conversion.

## Conclusion

Varnson's motion is <u>GRANTED</u> with regard to the limited issue of liability on its breach of contract claim against Steak n Shake.  Steak n Shake's motion for partial summary judgment is <u>GRANTED</u> with regard to Varnson's unjust enrichment and conversion claims, but <u>DENIED</u> with regard to Varnson's breach of contract claim against Steak n Shake and Steak n Shake's breach of contract and conversion claims against Varnson.  The case shall proceed to trial on Steak n Shake's breach of contract and conversion claims as well as the issue of damages on Varnson's breach of contract claim against Steak n Shake.

IT IS SO ORDERED.

Date:_____09/24/2012_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Robert L. Browning
SCOPELITIS GARVIN LIGHT & HANSON
rbrowning@scopelitis.com

Christopher J. Eckhart
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ceckhart@scopelitis.com

Renea Elaine Hooper
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
rhooper@scopelitis.com

Peter S. Kovacs
STEWART & IRWIN P.C.
pkovacs@silegal.com